IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRENT BLUNDELL, <br><br> Plaintiffs, <br><br> v. <br><br> MAX B. ELLIOTT, JEFF OYLER, PATRICK SCOTT, DENNIS P. CARLISLE, DAVIS COUNTY, AND DOES 1-10, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER SUSTAINING OBJECTION IN PART AND ADOPTING IN PART AND OVERRULING IN PART REPORT AND RECOMMENDATION** <br><br> Case No. 1:20-cv-00143-RJS-DBP <br><br> Chief Judge Robert J. Shelby <br><br> Magistrate Judge Dustin B. Pead |

Pro se Plaintiff Brent Blundell filed suit in October 2020 against Defendants Davis County, Davis County surveyor Max B. Elliott, and Davis County planner Jeff Oyler (collectively, County Defendants), and against Defendants Patrick Scott; President of Brighton Homes; and Dennis P. Carlisle, a licensed land surveyor.[1]  Blundell claims Davis County effected an unconstitutional taking by authorizing a developer to build on his property.  Blundell asserts claims under 28 U.S.C. § 1983 for an unconstitutional taking in violation of his Fifth Amendment rights and conspiracy to commit the same.[2]  Defendants filed Motions to Dismiss Blundell's claims.[3]

This case was referred to Magistrate Judge Dustin B. Pead pursuant to 28 U.S.C. § 636(b)(1)(B).[4]  On June 2, 2021, Judge Pead issued a Report and Recommendation (the Report)

---

[1] Dkt. 1 (Complaint).

[2] *Id.*

[3] Dkts. 25, 26, 27.

[4] Dkt. 2.

recommending that this court grant Defendants' Motions.[5]  Blundell timely objected to Judge

Pead's Report.[6]  For the reasons explained below, the court SUSTAINS IN PART Blundell's

Objection, and ADOPTS IN PART and OVERRULES IN PART Judge Pead's Report and

Recommendation.

**BACKGROUND[7]**

This case stems from the approval and development of the Sycamore Grove Planned

Urban Development Subdivision (the Subdivision) in Davis County, Utah.[8]  Blundell owns

property located to the north and west of the Subdivision.[9]  Directly west of Blundell's property

is the road 850 West,[10] in which Davis County owns a right of way.[11]

Scott is the president of Brighton Homes,[12] the developer of the Subdivision.[13]  Oyler is

an employee of Davis County and was the County planner assigned to work with Scott on the

Sycamore Grove project.[14]  Elliott is the County surveyor, an elected official of Davis County.[15]

Oyler and Scott worked jointly on the planned urban development (PUD) design, which

required the approach of the Subdivision's private access road to be placed on the County right

---

[5] Dkt. 48 (Judge Pead's Report).

[6] Dkt. 49 (Objection).

[7] The following facts are drawn from Blundell's governing First Amended Complaint (the FAC).  *See* Dkt. 30.  As explained below, the court reviews a portion of Judge Pead's Report de novo.  Thus, in conducting that review, the court "accept[s] all well-pleaded facts [in the complaint] as true and view[s] them in the light most favorable to [Blundell]."  *Jordan-Arapahoe, LLP v. Bd. of Cnty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011).

[8] Dkt. 30 (FAC).  The City of North Salt Lake annexed the Sycamore Grove Subdivision in May 2017.  *Id.* ¶ 87; Dkt. 25-3 (Certificate of Annexation).

[9] Dkt. 30 (FAC) ¶ 8 and Exhibit 1, *Sycamore Grove PUD Survey* (PUD Survey).

[10] *Id.* ¶ 71 and Exhibit 1 (PUD Survey).

[11] *Id.* ¶¶ 109, 116.

[12] *Id.* ¶ 11.

[13] *See id.* ¶¶ 16, 26, 28, 45, 112, 113.

[14] *Id.* ¶¶ 10, 115.

[15] *Id.* ¶ 9.

of way.[16]  But the County right of way overlapped with Blundell's west boundary.[17]  In August 2016, before the County approved the Subdivision, Blundell informed Oyler that the planned location for the north corner radius of the Subdivision's private access road, at the intersection of 850 West, encroached on his property's southwest corner.[18]  Oyler told Blundell he would have the issue reviewed.[19]  Blundell followed up multiple times and received the same response, that the property ownership issue was being reviewed.[20]

Blundell again raised the issue with Oyler before a November 2016 County Planning Commission meeting.[21]  Oyler informed Blundell that Elliott, the County surveyor, determined the disputed property was on the County's right of way and did not encroach on his property.[22] The Planning Commission discussed the possibility of a right of way dispute but recommended that the proposed PUD be forwarded to the County Commission for approval.[23]  To Blundell's knowledge, the disputed right of way was not sent to the County Commission.[24]  The PUD design submitted to the County Commission for final approval showed Blundell's property abutting the east boundary of the 850 West right of way.[25]

---

[16] *Id.* ¶ 116.

[17] *Id.*

[18] *Id.* ¶¶ 16–17, 51.

[19] *Id.* ¶ 18.

[20] *Id.*

[21] *Id.* ¶ 19.

[22] *Id.*

[23] *Id.* ¶ 20.

[24] *Id.* ¶ 86.

[25] *Id.* ¶ 123; *see also id.* ¶ 86.  In paragraph 123, the FAC states: "The PUD design Scott's project manager and Oyler presented to the Planning Commission for final approval by the Planning Commission, showed Blundell's property abutting the east boundary of the 850 West right of way."  It appears Blundell's second use of "Planning Commission" here is a typo, since Blundell alleges earlier in the FAC that the Planning Commission submitted the PUD design to the County Commission for approval.  *See id.* ¶¶ 20, 59, 86.

One week later, Blundell met with Oyler and Elliott, and they explained his property was seven feet east of where he believed it to be due to issues with the legal description in Blundell's deed.[26]  According to Elliott and Oyler, this meant the County's right of way did not overlap with his property, and, therefore, the PUD road radius could be placed there.[27]

Scott engaged Focus Engineering to provide Brighton Homes with an American Land Title Association (ALTA) survey of the properties underlying the Subdivision.[28]  An ALTA survey requires the surveyor to show, among other things, the relationship of the boundaries of the surveyed property with adjoining properties.[29]  Focus Engineering assigned Carlisle, a licensed land surveyor working for Focus Engineering at the time, to do the survey (Carlisle Survey).[30]

On the Carlisle Survey, the legal description of Blundell's property is shifted ten feet east of where the recorded deed describes it, which results in the west boundary of his property abutting the east boundary of the County's right of way in 850 West.[31]  Elliott and Oyler contend the ten-foot shift represented on the Carlisle Survey is the correct location of Blundell's west boundary.[32]  However, Blundell hired Gary Wier, another licensed land surveyor, to locate the boundaries of the subdivisions surrounding the Sycamore Grove PUD.[33]  Wier's findings showed

---

[26] *Id.* ¶ 21.

[27] *Id.*

[28] *Id.* ¶ 28.

[29] *Id.* ¶¶ 29–31.

[30] *Id.*

[31] *Id.* ¶¶ 40, 42 and Exhibit 1 (PUD Survey).  The Carlisle Survey's revision block also shows a notation dated November 7, 2016, that states: "Updated south boundary per county surveyor."  *Id.* ¶¶ 12, 33, 44, 122 and Exhibit 1 (PUD Survey).  Blundell alleges this shows Elliott requested revisions to the survey.  *Id.* ¶ 12.

[32] *Id.* ¶ 43.

[33] *Id.* ¶ 35.

4

the legal description of Blundell's property overlapped with the County's right of way in 850 West by more than seven feet.[34]

In March 2017, Blundell and his attorney, Ted Kanell, met with Elliot.[35]  Elliott restated that the County owned the right of way and presented Blundell and Kanell with a deed purporting to show the County's ownership.[36]  Blundell and his attorney met again with Elliott, Oyler, and a representative from the County Attorney's office in late May or early June of 2017.[37]  Elliott and Oyler again stated Blundell had no claim to property in the County right of way.[38]  Following this meeting, Oyler informed Blundell that a building permit for the road had been approved as designed.[39]

Ultimately, in June 2017, Brighton Homes placed the road radius of the Subdivision's main access road on Blundell's property.[40]  Blundell then raised the issue with Shawn Poor, a Brighton Homes project manager, by asking who authorized the road to be placed on Blundell's property.[41]  Poor stated the county surveyor determined the County owned the property and gave permission for the road construction.[42]

---

[34] *Id.* ¶¶ 36, 92 and Exhibit 2, *Wier Evidence*.

[35] *Id.* ¶ 23.

[36] *Id.*

[37] *Id.* ¶ 24.

[38] *Id.*

[39] *Id.* ¶ 25.  The FAC does not indicate who made this approval, but it appears from Blundell's other allegations that final approval for the PUD design, and presumably for the building permit, rested with the County Commission.  *See id.* ¶¶ 20, 59, 86.

[40] *Id.* ¶ 26.

[41] *Id.*

[42] *Id.*

## PROCEDURAL HISTORY

Blundell initiated this action on October 28, 2020,[43] asserting two § 1983 claims against Defendants for violations of his Fifth Amendment rights: (1) a claim against the County and Elliott for an unconstitutional taking;[44] and (2) a claim against Elliott, Oyler,[45] Scott, and Carlisle for an illegal conspiracy to take his private property for public use.[46]  As a remedy, Blundell seeks shared use of the utilities and the private road in and out of the Subdivision, or in the alternative, $600,000 to $900,000 in compensatory damages.[47]

On December 2, 2020, Defendants Carlisle and Scott separately moved for dismissal of Blundell's claims against them.[48]  While their motions were pending, Blundell filed his first Motion to Amend and attached a proposed First Amended Complaint (FAC).[49]  County Defendants, Carlisle, and Scott filed separate Motions to Dismiss the proposed FAC.[50]  Judge Pead granted Blundell's Motion to Amend and denied as moot Carlisle's and Scott's initial Motions to Dismiss.[51]

---

[43] Dkt. 1 (Complaint).

[44] Dkt. 30 (FAC) ¶¶ 104–112.

[45] Based on Blundell's emphasis on Elliott's and Oyler's County-authorized actions, County Defendants assume Blundell brings claims against them in their official capacities.  *See* Dkt. 25 (County Defs.' Motion) at 1 n.1.  And because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," Elliott, Oyler, and Davis County consider the term "County" to include both Elliott and Oyler.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  The court adopts the same convention here.  Presumably for the same reason, County Defendants jointly filed their Motion to Dismiss and appear not to limit argument regarding the takings claim to Elliott and the County alone.  *See* Dkt. 25 (County Defs.' Motion).  Accordingly, the court construes Blundell's first claim for a Fifth Amendment taking to be against all County Defendants, which appears consistent with the allegations in the FAC and with County Defendants' treatment of that claim in their Motion.  *See* Dkt. 25 (County Defs.' Motion) at 7, 9.

[46] *Id.* ¶¶ 113–125.

[47] *Id.* ¶ 126.

[48] Dkts. 12, 14.

[49] Dkt. 22.

[50] Dkts. 25, 26, 27.

[51] Dkts. 28, 29.

On January 20, 2021, in an attempt to supplement the factual allegations of the FAC, Blundell filed a second Motion to Amend and attached a proposed Second Amended Complaint (SAC).[52]  Judge Pead denied Blundell's second Motion to Amend without prejudice pending the resolution of Defendants' Motions to Dismiss the FAC.[53]

On June 2, 2021, Judge Pead issued the Report recommending that the court grant Defendants' Motions and dismiss Blundell's FAC without prejudice.[54]  Judge Pead first recommended dismissing Blundell's takings claim against the County Defendants for failure to state a claim upon which relief could be granted.  Specifically, Judge Pead found Blundell's allegation that the County Defendants approved the Subdivision plat maps was insufficient to show substantial involvement by a government entity in the development of private lands for public use.[55]  Judge Pead next concluded that without an underlying takings claim, Blundell's conspiracy claim against the County Defendants also fails because it is not an independent basis for liability.[56]  Finally, Judge Pead recommended dismissing Blundell's conspiracy claim against Scott and Carlisle because: (1) they are not state actors, (2) Blundell does not plead allegations sufficient to support liability under the 'joint action' test, and (3) Blundell does not state a claim for an underlying constitutional violation.

---

[52] Dkts. 31, 31-1.

[53] Dkt. 44.

[54] Dkt. 48 (Judge Pead's Report) at 17.

[55] *Id.* at 9–11.

[56] *Id.* at 11–12.

On June 16, 2021, Blundell timely filed a 'Response'—construed here as an objection—to Judge Pead's Report entitled "Response to ECF 48" (Blundell's Objection).[57]  Defendants responded to Blundell's Objection and Blundell filed two additional briefs in reply.[58]

On the same day Blundell filed his Objection, he also filed a third Motion to Amend and attached a proposed Third Amended Complaint (TAC).[59]  On Defendants' Motion, Judge Pead granted an extension of time to respond to Blundell's third Motion to Amend until the court ruled on Judge Pead's Report.  Now before the court is Blundell's Objection to Judge Pead's Report and Recommendation.

## ANALYSIS

Blundell objects to Judge Pead's Report, arguing Judge Pead applied the wrong legal standard when assessing the sufficiency of Blundell's Fifth Amendment takings claim.  For the reasons discussed below, the court sustains the Objection in part.

### I.    Legal Standard of Review

Federal Rule of Civil Procedure 72(b)(3) requires the court to "determine de novo any part of the magistrate judge's disposition that has been properly objected to."[60]  "When no timely

---

[57] Dkt. 49 (Blundell's Objection).  As explained below, although Blundell's filing was not termed an objection, I will liberally construe it as such.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[58] *See* Dkts. 56, 57.

[59] Dkt. 50 (Third Motion to Amend).  In Blundell's Objection to Judge Pead's Report, and his additional Replies to Defendants' Oppositions, he objects to Judge Pead's purported denials of his Second and Third Motions to Amend. *See* Dkt. 49; Dkt. 56 ¶¶ 7–11; Dkt. 57 at 2.  In ruling on the motions, Blundell contends Judge Pead improperly refused to allow him to introduce additional facts in support his allegations. *See, e.g.*, Dkt. 57 ¶ 2.  Judge Pead's Order denying Blundell's Second Motion to Amend and his order continuing the deadline for Defendants to respond to Blundell's Third Motion to Amend are not under review in this order.  But for the benefit of the pro se Plaintiff, the court clarifies that his Second Motion to Amend was denied without prejudice pending the resolution of the Defendant's Motions to Dismiss. *See* Dkt. 44.  This means Blundell could still seek leave to amend after Defendant's Motions to Dismiss were resolved.  Further, Blundell's Third Motion to Amend has not been denied.  Judge Pead allowed Defendants to wait to respond to Blundell's Motion until the court rules on the Report at issue in this order. *See* Dkt. 54.

[60] *See also Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) ("De novo review is statutorily and constitutionally required when written objections to a magistrate's report are timely filed with the district court.") (citation omitted).

objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." [61]  Still, "district court[s] [are] accorded considerable discretion . . . and may review [them] under any standard it deems appropriate" when magistrate reports go unchallenged.[62]

To qualify as a proper objection that triggers de novo review, the objection must be both timely and specific.[63]  Thus, de novo review is not required where a party advances objections to a magistrate judge's disposition that are either indecipherable or overly general.[64]  While documents filed by pro se litigants are to be liberally construed, objections must still be sufficiently specific and comply with local rules.[65]  In addition, "theories raised for the first time in objections to the magistrate judge's report are deemed waived."[66]

The court will now discuss whether Blundell's Objection to Judge Pead's Report is sufficiently specific to warrant de novo review.

---

[61] *See* Fed. R. Civ. P. 72(b) Advisory Committee's note to 1983 amendment (citing *Campbell v. U.S. Dist. Court for N. Dist. of Cal.*, 501 F.2d 196, 206 (9th Cir. 1974), *cert. denied*, 419 U.S. 879).

[62] *Summers*, 927 F.2d at 1167.

[63] *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996) ("[W]e hold that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review.").

[64] *See id.* ("Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review.") (citation omitted); *see also Moore v. Astrue*, 491 F. App'x 921, 922 (10th Cir. 2012) (upholding district court's clear error review of magistrate judge's report and recommendation because Plaintiffs objected only "generally to every finding" in the report).

[65] *See* DUCivR 83-1.7 (unrepresented parties are obligated to comply with Federal Rules of Civil Procedure and Local Rules); *see also* Fed. R. Civ. P. 72(b)(2) (parties can file specific written objections).

[66] *See United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) (citing *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996)).

## II.     Blundell's Response to Judge Pead's Report Raises a Specific Objection

Blundell timely filed an Objection to Judge Pead's Report.  County Defendants did not file a response to Blundell's Objection, nor were they required to.[67]  However, Defendants Scott and Carlisle argue Blundell's Objection is improper for multiple reasons and the court should adopt the Report in its entirety.[68]  According to Scott and Carlisle, Blundell fails to object to any specific portion of the Report or advance any argument related to Judge Pead's findings or legal conclusions.[69]  They further argue Blundell fails to object even in a broad, conclusory manner, and instead actually concedes the Report is correct by stating his intent to file a TAC.[70]  Finally, they argue Blundell improperly raises new arguments and evidence for the first time in objection by including information from his proposed TAC.[71]

The court agrees in part with Scott and Carlisle.  Blundell's Objection generally advances arguments supporting his proposed Third Amended Complaint, which is not a proper objection to a Report addressing motions to dismiss a different pleading.[72]  And Blundell fails to raise a specific objection to Judge Pead's findings with respect to Scott and Carlisle's Motions.

---

[67] *See* DUCivR 72-3(b)-(c).  Under subsection (c) of the Local Rule, the court ordinarily will not sustain an objection without first giving the opposing party an opportunity to respond.  However, given that the court's ruling here turns on purely legal issues that were fully and adequately briefed, together with limitations on supplying in responsive briefing new argument and authority not previously submitted to the magistrate judge, the court determined it would not be materially helpful to receive additional briefing and elected not to put the County Defendants to unnecessary expense.

[68] Dkt. 51 (Opposition) at 3–5.

[69] *Id.* at 4.

[70] *Id.*

[71] *Id.* at 4–5.

[72] Dkt. 49 (Blundell's Objection) at 1–3 (summarizing the basis for the "legal argument in the Third Amended Complaint" and discussing the value of "the Kanell letter," which is evidence referenced in the TAC).

However, the court parts ways with Scott and Carlisle as to whether Blundell's Objection, liberally construed, includes any specific objection to Judge Pead's Report.[73] Blundell refers specifically to Judge Pead's "substantial involvement" analysis by stating, "Judge Pead, in ECF 48 suggested that Plaintiff's legal argument was weak.  Judge Pead relied on the 'not enough involved' principle stated in 11A *McQullin Mun. Corp.* § 32:164 (3d ed.)."[74] Blundell goes on to cite relevant Supreme Court precedent from *Arkansas Game & Fish Commission v. United States*[75] and *Loretto v. Teleprompter Manhattan CATV Corp.*[76]  Blundell

---

[73] The court recognizes Scott and Carlisle do not represent County Defendant's in opposing Blundell's Objection, and County Defendants were not required to file a response.  Still, Scott and Carlisle make arguments in opposition that are not limited to the claims against them and implicitly argue in support of County Defendants' Motion to Dismiss.  *See* Dkts. 51, 53 (arguing Blundell "does not object to any specific portion of the [Report]," and the court should adopt Judge Pead's Report "in its entirety").  Thus, the court acknowledges Scott's and Carlisle's arguments only for the purpose of explaining its reasoning.

[74] Dkt. 49 (Blundell's Objection) at 1.

[75] 568 U.S. 23, 31 (2012).

[76] 458 U.S. 419, 426 (1982); Dkt. 49 (Blundell's Objection) at 2.  Blundell refers to these cases as the "legal argument" in his TAC, and the court will not consider arguments or information raised for the first time in objection. S*ee Garfinkle*, 261 F.3d 1030, 1031.  Nor will the court consider pleadings beyond the FAC that Blundell has not been permitted to file at this time.  However, Blundell relied on the same caselaw in his Opposition to County Defendants' Motion to Dismiss, thus he did not argue this case law for the first time in his Objection or in his TAC. *See* Dkt. 32 (Blundell's Opposition to County Defs.' Motion) ¶¶ 37, 44, 46, 48.

further clarifies his Objection in reply[77] to Scott and Carlisle's opposition briefs.  In the second

reply, Blundell clarifies that his initial response to Judge Pead's Report "addressed the [issue

that] [t]he notion of 'not enough involved' is not supported by case law [and] the appropriate

case law in this matter is *Arkansas Game and Fish Commission v. United States* [quoting

*Loretto*]."[78]

      Accordingly, I find Blundell's Objection, liberally construed, raises a specific objection

to the legal standard Judge Pead applied when assessing whether the allegations of the FAC were

sufficient to state a takings claim.  Specifically, Blundell objects to Judge Pead's reliance on the

"substantially involved" requirement raised in County Defendants' Motion.[79]  Relying on this

standard, Judge Pead analyzed whether the government committed a constitutional taking by

---

[77] Blundell filed two additional Reply briefs purportedly responding to Scott and Carlisle's oppositions to his Objection (Dkts. 51, 53).  The first, entitled "Reply to ECF 51, 52 and 53," recites certain factual allegations, recounts Judge Pead's denial of Blundell's Motion to File Second Amended Complaint, and asks the court to review the facts and arguments presented in the proposed Third Amended Complaint.  *See* Dkt. 56.  The second, entitled "Response to Defendants Scott and Carlisle Memorandum Decision And Order," reiterates issues raised in Blundell's earlier responses to Judge Pead's Report.  *See* Dkt. 57.  Specifically, that Judge Pead applied the wrong caselaw under the "not enough involved" analysis and denied Blundell's Motion for Leave to File a Second Amended Complaint.  *See id.*

Reply briefs in support of objections are not contemplated by Fed. R. Civ. P. 72(b), which allows for a response to objections.  Nevertheless, pro se litigants are held to less stringent standards then are parties formally represented by lawyers.  *See Haines*, 404 U.S. at 520.  Therefore, the court will consider Blundell's additional briefs for the purpose of clarifying objections raised in his initial response to Judge Pead's Report.  *See Nabi v. Terry*, 934 F. Supp. 2d 1245, 1246 n.2 (D.N.M 2012) ("Although reply briefs in support of objections are not contemplated by Fed. R. Civ. P. 72(b), which allows for a response to objections, the Court will consider the government's reply.").  The court will not, however, consider new facts, arguments, or issues raised in Blundell's Reply briefs, second or third Motions to Amend, or proposed SAC and TAC.  *See Garfinkle*, 261 F.3d at 1031 ("[T]heories raised for the first time in objections to the magistrate judge's report are deemed waived.").

For purposes of ruling on Judge Pead's Report and Blundell's Objection, the court's review is limited to the record before Judge Pead.  That record includes the well-pled factual allegations from the FAC, which the court accepts as true at this stage, and the parties' briefs related to the Defendants' Motions to Dismiss.  To the extent Blundell's additional responses are construed as further objections to Judge Pead's Report, they are untimely under Fed. R. Civ. P. 72(b)(2) ("Within 14 days after being served a copy of the recommended disposition, a party may serve and file specific written objections[.]").

[78] Dkt. 57 (Blundell's Second Reply) at 1.

[79] *See* Dkt. 49 (Blundell's Objection) ("Judge Pead, in ECF 48 suggested that Plaintiff's legal argument was weak.  Judge Pead relied on the "not enough involved" principle stated in 11A *Mcquillin Mun. Corp.* § 32:164 (3d).").

being "substantially involved" in the Subdivision's development.[80]  Blundell argues "the notion of 'not enough involved' is not supported by case law," and the appropriate law to be applied is from *Loretto*, as articulated in *Arkansas Game & Fish*.  Therefore, the court will review this portion of Judge Pead's Report de novo.

Because the other portions of Blundell's response cannot fairly be liberally construed as a proper objection to the Report, the court reviews the remainder of Judge Pead's Report for clear error.

### III.   Blundell's Objection is Sustained in Part—Under De Novo Review, County Defendants' Motion to Dismiss is Denied

*A.  Rule 12(b)(6) Legal Standard*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[81]  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[82]  When evaluating a motion to dismiss, the court "accept[s] all well-pleaded facts [in the complaint] as true and view[s] them in the light most favorable to the plaintiff."[83]  However, the court will not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[84]  The reviewing court is required to "draw on its judicial experience and common sense" to evaluate whether the well-pled facts state a plausible claim for relief.[85]  "Though a

---

[80] *See* Dkt. 48 (Judge Pead's Report) at 9–11.

[81] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[82] *Id.*

[83] *Jordan-Arapahoe,* 633 F.3d at 1025.

[84] *Iqbal*, 556 U.S. at 678.

[85] *Id.* at 679.

complaint need not provide detailed factual allegations, it must give just enough factual detail to provide [defendants] fair notice of what the . . . claim is and the grounds upon which it rests."[86] As the moving party, County Defendants carry the burden to support their motion with "relevant facts, supporting authority, and argument."[87]

The court now turns to the legal standard for a Fifth Amendment takings claim before addressing the County Defendants' objections to the adequacy of Blundell's FAC.

### B.  Legal Standard for a Takings Claim

The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, provides, "nor shall private property be taken for public use, without just compensation."  As interpreted by the Supreme Court, takings claims fall into two categories: (1) physical takings, which result from permanent physical occupation of private property; and (2) regulatory takings,[88] which stem from government-imposed regulations restricting an owner's ability to use his own property.[89]  "[The Court's] jurisprudence governing [] use restrictions has developed more recently," but "[t]he Court's physical takings jurisprudence is as old as the Republic."[90]  The parties do not appear to dispute that the alleged taking at issue is properly classified as a physical taking.[91]

A physical taking occurs when the government "physically takes possession of an interest in property for some public purpose,"[92] for example, "when the government uses its power of

---

[86] *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018).

[87] *See* DUCivR 7-1.

[88] *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 321–24 (2002).

[89] *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071–72 (2021).

[90] *Id.* at 2071.

[91] *See* Dkt. 25 (County Defs.' Motion) at 10–11 n.9 (referring to the incident at issue as a "physical invasion").

[92] *Tahoe-Sierra*, 535 U.S. at 322.

14

eminent domain to formally condemn property. . . . [or] physically takes possession of property without acquiring title to it."[93]  Physical takings can also occur when the government appropriates private property for a third party,[94] as in *Loretto v. Teleprompter Manhattan CATV Corp.*[95]  There, the Supreme Court established a bright-line rule that "a permanent physical occupation of property authorized by government is a taking."[96]  "These sorts of physical appropriations constitute the clearest sort of taking, [and are assessed] using a simple, *per se* rule: The government must pay for what it takes."[97]

Having reviewed the appropriate legal standard for a federal takings claim, the court now turns to County Defendants' arguments as to why Blundell fails to adequately state a claim for relief.

### C.  The "Substantial Involvement" Requirement Is Not Controlling

At the outset, the court notes its analysis is confined to the arguments raised in the County Defendants' Motion to Dismiss.  With respect to Blundell's federal takings claim, the County Defendants' sole basis for dismissal is that "[he] failed to allege substantial involvement by the County in developing the Sycamore Grove Subdivision[.]"  Accordingly, the court's review is limited to County Defendants' argument in favor of the "substantial involvement" requirement.

County Defendants argue that when a taking allegedly results from a private party's development activity, a plaintiff stating a takings claim "must demonstrate 'that the government

---

[93] *Cedar Point*, 141 S. Ct. at 2071 (citations omitted).

[94] *Id.* (explaining that a different standard applies to regulatory takings than the standard applied when the government "appropriate[es] private property for itself or a third party[.]").

[95] 568 U.S. 23 (2012).

[96] *Arkansas Game & Fish*, 568 U.S. at 31 (citing *Loretto*, 458 U.S. at 426).

[97] *Id.*

entity was substantially involved in the development of private lands for public use which unreasonably injured the property of others.'"[98]  As a result, County Defendants argue "a county's mere approval of subdivision maps, without more, does not convert private development into a public use that gives rise to inverse condemnation liability."[99]  Blundell disputes this standard and argues the rule set forth in *Loretto* controls, namely that "a permanent physical occupation of property authorized by the government is a taking."[100]

For several reasons, the court is unpersuaded the "substantially involved" standard articulated by County Defendants applies in this case.  First, and most importantly, County Defendants provide no controlling authority to support their proposition that, to state a federal takings claim, Blundell must demonstrate the government's substantial involvement in the development of the Subdivision.  Nor is the court aware of any authority establishing this as a requirement for proving (let alone pleading) a federal takings claim.  County Defendants rely solely on five state court opinions from California, Nevada, Nebraska, and Washington.[101]  None of those cases recognize or purport to establish a substantial involvement element for federal takings claims.  Three of the five cases deal exclusively with state constitutional takings claims.[102]  While the other two appear to include both state and federal constitutional claims,

---

[98] Dk. 25 (County Defs.' Motion) at 7 (quoting 11A McQuillin Mun. Corp. § 32:164 (3d ed.)).  County Defendants' statement of the law comes from McQullin's The Law of Municipal Corporations.  However, the proposition stated in the treatise, upon which County Defendants rely, cites to only one state court opinion for support.  *See* 11A McQuillin Mun. Corp. § 32:164 n.4 (3d ed.) (citing *Fritz v. Washoe Cty*, 376 P.3d 794 (Nev. 2016)).

[99] Dkt. 25 (County Defs.' Motion) at 7 (quoting 11A McQuillin Mun. Corp. § 32:164 (3d ed.)).

[100] Dkt. 32 (Blundell's Opposition to County Defs.' Motion) at 8, 11–12; *see also* Dkt. 49 (Blundell's Objection) at 1–2; Dkt. 57 (Blundell's Second Reply) at 1.

[101] *See* Dkt. 25 (County Defs.' Motion) at 7–9.

[102] *See Phillips* v. *King Cty*, 968 P.2d 871, 876 (Wash. 1998) (en banc); *Ullery* v. *Cty of Contra Costa*, 202 Cal. App. 3d 562, 568 (Cal. Ct. App. 1988); *Yox* v. *City of Whittier*, 182 Cal. App. 3d 347, 349 (Ca. Ct. App. 1986).

neither explicitly cites, interprets, or applies federal takings law.[103]  In short, the County

Defendants have not established as a matter of law that federal takings law requires proof of

substantial involvement.  This itself is fatal to their Rule 12 Motion.

Moreover, the cases cited by the County Defendants offer little persuasive support for

applying a substantial involvement pleading requirement in this case.  To begin, the cases cited

by County Defendants are procedurally distinct from the instant case—of the five opinions, four

arose on appeal from summary judgment[104] and the fifth was on appeal following trial.[105]  None

of these cases even address the appropriate standard to apply at the pleading stage when ruling

on a motion to dismiss.

All five cases cited by County Defendants are also factually distinct from the instant case.

Each of the cases involved unexpected flood damage to a plaintiff's property after a government

entity approved a subdivision or construction design with allegedly defective drainage systems.

In each case, the court declined to hold the government liable based on mere approval of the

subdivision design or construction.  Notably, those outcomes are consistent with the Supreme

Court's own line of flooding cases, holding that there is no taking where "the Government did

not intend to flood the land or have 'any reason to expect that such a result would follow' from

construction[.]"[106]  In sharp contrast here, County Defendants' approval of the Subdivision and

---

[103] *See Fritz*, 376 P.3d at 796–98 (Nevada 2016) (stating that Nevada caselaw has not previously set forth the elements of an inverse condemnation claim, listing the newly established elements, and proceeding to cite only state authorities); *Bargmann* v. *State Dep't of Roads* (Neb. 1999), 600 N.W.2d 797 at 804–05 (stating that Nebraska's constitutional right to just compensation is broader than the federal right and proceeding to cite only to state authorities).

[104] *See Fritz*, 376 P.3d at 795 (Nevada); *Phillips*, 968 P.2d 871, 875 (Wash. 1998) (en banc); *Bargmann*, 600 N.W.2d 797, 800 (Neb. 1999); and *Yox*, 182 Cal. App. 3d 347, 349 (Cal. Ct. App. 1988).

[105] *See Ullery v. Cty of Contra Costa*, 202 Cal. App. 3d 562, 565 (Cal. Ct. App. 1988).

[106] *Arkansas Game & Fish*, 568 U.S. at 34 (quoting *Sanguinetti v. United States*, 264 U.S. 146, 148 (1924)); *see also John Hortsmann Co. v. United States*, 257 U.S. 138, 146 (1921) ("[I]t would border on the extreme to say that the government intended a taking by that which no human knowledge could even predict.").

construction permit acted as direct authorization for Brighton Homes, a private party, to build on the property allegedly owned by Blundell.  Thus, the approved construction all but guaranteed Blundell's resulting injury.  And where, as here, County Defendants had notice of Blundell's property dispute and the competing land surveys before granting the approvals, such an injury was well within the foreseeable consequences of the government's actions.[107]

In short, County Defendants fail to establish as a matter of law that federal takings claims require proof of substantial involvement by the relevant governmental entity, let alone in cases like this one.

### D.  *Loretto's Bright-Line Rule Applies*

Blundell maintains *Loretto* provides the correct legal standard to apply in this case.  The court agrees.

In *Loretto*,[108] New York adopted a law requiring landlords to allow cable companies to install equipment on their properties.[109]  The plaintiff alleged that the installation of a one-half-inch diameter cable and two one-and-one-half-cubic-foot boxes on her roof amounted to a taking.[110]  The Court agreed, stating that where government action results in a "permanent physical occupation of property, our cases uniformly have found a taking to the extent of the occupation, without regard to whether the action achieves an important public benefit or has only minimal economic impact on the owner."[111]  Just this year, the Supreme Court reaffirmed that

---

[107] Even if the court were to apply a "substantial involvement" requirement to Blundell's claim, it is unclear at this stage of the proceeding based on the nature of FAC and the lack of relevant legal authority that the government entity was not substantially involved as a matter of law under the Rule 12 standard.

[108] *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982).

[109] *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2073 (summarizing *Loretto*, 458 U.S. at 423).

[110] *Id.* (summarizing *Loretto*, 458 U.S. at 424).

[111] *Id.* (quoting *Loretto*, 458 U.S. at 434–35).

holding in *Cedar Point Nursery v. Hassid*, stating that "[*Loretto*] made clear that a permanent physical occupation constitutes a *per se* taking regardless whether it results in only a trivial economic loss."[112]  At bottom, *Loretto* stands for the bright-line rule that "a permanent physical occupation authorized by government is a taking."[113]

County Defendants argue *Loretto*'s bright-line rule does not apply for two reasons.  First, they argue the government authorization in *Loretto* was a legislatively-enacted state statute of general applicability and constituted substantial involvement, while the authorization here "was simply an administrative approval of a privately-prepared subdivision plat and application for construction permit according to that plat."[114]  Second, they argue *Loretto* did not directly address the substantial involvement requirement.[115]  The court addresses each argument in turn.

County Defendants contend that because the government in *Loretto* used legislative authority to authorize third-party occupation of the plaintiff's property, its involvement was substantial and constituted a taking.  County Defendants further argue the law at issue in *Loretto* was generally applicable.  According to County Defendants, however, Davis County's involvement in the Subdivision's development is insufficient to create liability for a federal takings claim because approval of the Subdivision plat is considered an administrative act under Utah law.[116]  Thus, Davis County "did not [] use its legislative authority [or] enact an ordinance authorizing private developers to install corner radii on other private property owners' property."[117]

---

[112] 141 S. Ct. at 2073.

[113] *Arkansas Game & Fish*, 568 U.S. at 31.

[114] Dkt. 41 (County Defs.' Reply) at 4.

[115] *Id.*

[116] *Id.*

[117] *Id.*

In the court's view, County Defendants are in essence arguing for an exception to *Loretto*'s per se rule where the government exercises administrative rather than legislative authority and where the government authorizes one person rather than many to occupy other citizens' property.  To the extent the use of administrative rather than legislative authority makes the government's involvement less "substantial," the court finds this distinction immaterial.  As stated previously, County Defendants provide no controlling authority invoking a "substantial involvement" requirement, and the court is aware of none.  For the same reason, it is immaterial whether the physical occupation of a plaintiff's property results from a generally-applicable law or a one-off approval.  Nothing in the *Loretto* decision or the Supreme Court's later opinions suggests the result would have been different based on the type of authority the government invoked or how many properties were at issue.  Indeed, *Cedar Point Nursery* suggests the opposite may be true: "The essential question is not . . . whether the government action at issue comes garbed as a regulation (or statute, or ordinance, or miscellaneous decree).  It is whether the government has physically taken property for itself or someone else—by whatever means-[.]"[118]

County Defendants' second argument why *Loretto* does not apply fails for similar reasons.  County Defendants argue "*Loretto*'s bright-line rule is inapposite to the County's substantial involvement [because] *Loretto* did not directly address the requirement."  County Defendants argue further that "[i]n cases like *Loretto*, substantial involvement is a given" because "the state used its legislative power to authorize one citizen to take another's real property."[119]  This much is true—*Loretto* did not address a substantial involvement requirement.

---

[118] *Cedar Point*, 141 S. Ct. at 2072.

[119] Dkt. 41 (County Defs.' Reply) at 5.

This is not surprising, as the Supreme Court has never articulated any such requirement. Regardless, neither did *Loretto* articulate an exception from its per se rule for administrative approvals of a third-party subdivision plat or construction permit application.  Again, County Defendants provide no binding authority instructing this court to assess whether the government's involvement was substantial before applying *Loretto*.

At bottom, Blundell alleges the County's approvals authorized a third-party to permanently occupy his property.  Absent additional guidance from the Supreme Court or the Tenth Circuit, this court is bound by the rule set forth in *Loretto* and reaffirmed in the Court's subsequent cases: "[A] permanent physical occupation authorized by government is a taking[.]"

Based on the legal authorities and arguments put forth in their Motion, the court concludes County Defendants fail to show how Blundell's claim against them for a Fifth Amendment physical taking is deficient.  Therefore, the court sustains Blundell's Objection in part, and overrules that portion of Judge Pead's Report recommending dismissal of Blundell's takings claim against County Defendants.

## IV.    The Remainder of the Report is Reviewed for Clear Error

For the reasons explained above, the court reviews the remainder of Judge Pead's Report for clear error.  Tracking the County Defendants' sole argument in their Motion to Dismiss,[120] Judge Pead recommended dismissal of Blundell's conspiracy claim against the County Defendants on the basis that it could not survive independent of the takings claim.[121]  That reasoning is correct.  However, now that the court has overruled that portion of Judge Pead's Report recommending dismissal of the takings claim, there is no longer any independent basis

---

[120] Dkt. 25 (County Defs.' Motion) at 9–10.

[121] Dkt. 48 (Judge Pead's Report) at 11–12.

contemplated in Judge Pead's Report for dismissal of the conspiracy claim as applied to the County Defendants. For that reason, the court overrules Judge Pead's conclusion that the conspiracy claim against the County Defendants must be dismissed at this stage.

Having reviewed the remainder of the Report, the court finds no clear error in any of Judge Pead's remaining conclusions or recommendations. Accordingly, the court adopts the remainder of the Report in its entirety.

## CONCLUSION

For the reasons stated, Blundell's Objection[122] is SUSTAINED IN PART, and Judge Pead's Report[123] is ADOPTED IN PART and OVERRULED IN PART. Scott's and Carlisle's Motions to Dismiss[124] are GRANTED. The claims against them are dismissed without prejudice. The County Defendants' Motion to Dismiss[125] is DENIED.

SO ORDERED this 30th day of September 2021.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[122] Dkt. 49 (Blundell's Objection).

[123] Dkt. 48 (Judge Pead's Report).

[124] Dkts. 26, 27.

[125] Dkt. 25 (County Defs.' Motion).